Citation Nr: 1518735 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 08-00 174A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Albuquerque, New Mexico


THE ISSUE

Entitlement to an initial compensable disability evaluation for service-connected hypertension. 



REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Sarah Richmond, Counsel


INTRODUCTION

The Veteran served on active duty from April 1969 to January 1973. 

This matter comes before the Board of Veterans' Appeals (hereinafter "Board") on appeal from a November 2009 rating decision by the Department of Veterans Affairs (hereinafter "VA") Regional Office (hereinafter "RO") in Albuquerque, New Mexico RO, which, in pertinent part, granted service connection for hypertension, and assigned a noncompensable disability evaluation, effective June 30, 2006. 

The Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge (hereinafter "VLJ") in June 2013. A transcript of this proceeding is located in Virtual VA. 

This case was previously before the Board in October 2013 at which time the Board denied the claim (and also adjudicated other claims that are unrelated). However, pursuant to a joint motion for partial remand, the U.S. Court of Appeals for Veterans Claims (Court) vacated the Board's October 2013 decision, insofar as it denied entitlement to an initial compensable rating for hypertension. The joint motion noted that the Board should have discussed evidence prior to the effective date for the award of service connection for hypertension in June 30, 2006, as it pertained to any prescription medication the Veteran was taking for hypertension. Specifically the joint motion noted that the Board should determine whether blood pressure readings from December 1995 were taken before the Veteran's hypertension medication was prescribed, and discuss the relevance of this evidence as it pertains to the Veteran's claim for a higher rating for hypertension. See March 2015 joint motion for partial remand, p. 3. 

As previously noted in the October 2013 decision, the issue of service connection for the tortuous aorta, claimed as secondary to the service-connected hypertension has been reasonably raised by the record (see July 2012 VA hypertension examination report and the June 2013 hearing testimony transcript), but has not been adjudicated by the AOJ. The issue of entitlement to service connection for headaches and heart palpitations secondary to hypertension also has been raised by the record in a February 2008 VA examination report, but has not been adjudicated by the AOJ. Therefore, the Board does not have jurisdiction and refers these matters to the AOJ for appropriate action. 


FINDING OF FACT

For the entire period of the appeal, the Veteran's hypertension has been manifested by a history of diastolic pressure predominantly 100 or more that requires continuous medication for control. 


CONCLUSION OF LAW

The criteria for entitlement to an initial 10 percent disability rating, but no higher, for service-connected hypertension have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1-4.14, 4.27, 4.31, 4.104, DC 7101 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Duties to Notify and Assist

The Veterans Claims Assistance Act (hereinafter "VCAA") describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the Veteran and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA notice must inform the Veteran of any information and evidence not of record (1) that is necessary to substantiate the claims; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. See 38 C.F.R. § 3.159(b)(1) . 

With regard to notice regarding an initial evaluation following the grant of service connection, once service connection is granted, the claim is substantiated and additional VCAA notice is not required; any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

Filing a notice of disagreement (hereinafter "NOD") begins the appellate process, and any remaining concerns regarding evidence necessary to establish a more favorable decision with respect to downstream elements (such as an effective date) are appropriately addressed under the notice provisions of 38 U.S.C.A. §§ 5104 and 7105. Goodwin v. Peake, 22 Vet. App. 128 (2008). Where a claim has been substantiated after the enactment of VCAA, the Veteran bears the burden of demonstrating any prejudice from defective VCAA notice with respect to the downstream elements. Id. There has been no allegation of prejudice with regard to the notice in this case; hence further VCAA notice is not required with regard to the initial rating appeal. 

Pre- and post-adjudication VCAA letters dated in July 2006 and June 2008 explained the evidence necessary to substantiate the claim, and informed the Veteran of his and VA's respective duties for obtaining evidence. These letters also explained how a disability rating is determined for a service-connected disorder and the basis for determining an effective date upon the grant of any benefit sought, in compliance with Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490-491 (2006). The claim was readjudicated in a September 2012 SSOC. Accordingly, any prejudicial error in the timing or content of VCAA notice has not been established and any error is not outcome determinative. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency). 

Further, if any notice deficiency is present in this case, the Board finds that any prejudice due to such error has been overcome by the following: (1) based on the communications sent to the Veteran over the course of this appeal, he clearly has actual knowledge of the evidence he is required to submit in this case; and (2) based on the Veteran's contentions as well as the communications provided to him by VA, it is reasonable to expect that he understands what is needed to prevail. See Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009); Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337 (3d Cir. 1974) ("[N]o error can be predicated on insufficiency of notice since its purpose had been served."). In order for the Court to be persuaded that no prejudice resulted from a notice error, "the record must demonstrate that, despite the error, the adjudication was nevertheless essentially fair." Dunlap v. Nicholson, 21 Vet. App. 112, 118 (2007). 

VA has a duty to assist veterans in obtaining evidence necessary to substantiate their claims. The claims file contains in-service and post-service medical treatment records, include private treatment records from practitioners the Veteran has identified, and reports of VA examinations in February 2008 and July 2012. With respect to the VA examinations, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). These VA examination reports generally reflect review of the claims file, examination of the Veteran, and clear description and evaluation of his hypertension. In particular, these examination findings are sufficient for proper application of the relevant rating criteria and adequate for the purpose of adjudication the issue decided below. 

As noted above, VA also provided the Veteran with a Board hearing before the undersigned VLJ. During the June 2013 hearing, the VLJ specifically clarified the issues on appeal. Additionally, the VLJ sought to identify any pertinent information/evidence not currently associated with the claims folder that might have been overlooked or was outstanding. Moreover, neither the Veteran nor his representative have asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor have they identified any prejudice in the conduct of the Board hearing. As such, the Board finds that, consistent with Bryant v. Shinseki, 23 Vet. App. 488 (2010), the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2). 

The Veteran has not made the RO or the Board aware of any additional evidence that must be obtained in order to fairly decide the claim on appeal. He has been given ample opportunity to present evidence and argument in support of his claim. All relevant evidence necessary for an equitable disposition of the Veteran's appeal of the issue has been obtained and the case is ready for appellate review. The Board additionally finds that general due process considerations have been complied with by VA. See 38 C.F.R. § 3.103 (2014). 

Increased Rating for Hypertension

Disability ratings are determined by applying the criteria established in VA's Schedule for Rating Disabilities, which is based upon the average impairment of earning capacity. Individual disabilities are assigned separate Diagnostic Codes. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.20 (2014). When a question arises as to which of two ratings applies under a particular Diagnostic Code, the higher evaluation is assigned if the disability more nearly approximates the criteria for the higher rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Consideration must be given to increased evaluations under other potentially applicable Diagnostic Codes. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In Fenderson v. West, 12 Vet App 119, 125-26 (1999), however, the Court distinguished appeals involving a veteran's disagreement with the initial rating assigned at the time a disability is service-connected. Accordingly, where the question for consideration is the propriety of the initial rating assigned, as is the case for the present initial rating claim for hypertension, evaluation of the medical evidence since the effective date of the grant of service connection, and consideration of the appropriateness of "staged rating" (i.e., assignment of different ratings for distinct periods of time, based on the facts found) is required. See id. at 126-27. Moreover, the Board notes, the Court held that in claims for increased rating VA must consider that a claimant may experience multiple distinct degrees of disability, resulting in different levels of compensation, from the time the increased rating claim is filed to the time a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2014). 

Ratings shall be based, as far as practicable, upon the average impairments of earning capacity. However, from time to time, VA will readjust this schedule of ratings in accordance with experience. To accord justice in an exceptional case in which the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve an extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1). 

The Veteran's hypertension is rated as noncompensable pursuant to 38 C.F.R. § 4.104 , DC 7101, for hypertensive vascular disease (hypertension and isolated systolic hypertension). Given the nature of present claim for a higher initial evaluation, the Board has considered all evidence of severity since the effective date for the award of service connection in June 30, 2006, in addition to evidence prior to the effective date in accordance with the rating criteria for hypertension. The Board's adjudication of this claim accordingly satisfies the requirements of Hart. 

DC 7101 provides ratings for hypertensive vascular disease (hypertension and isolated systolic hypertension). A 10 percent rating is warranted with diastolic pressure predominantly 100 or more, or; systolic pressure predominantly 160 or more, or; when an individual with a history of diastolic pressure predominantly 100 or more requires continuous medication for control. A 20 percent rating is warranted with diastolic pressure predominantly 110 or more or; systolic pressure predominantly 200 or more. A 40 percent rating is warranted with diastolic pressure predominantly 120 or more. A 60 percent rating is warranted with diastolic pressure predominantly 130 or more. 38 C.F.R. § 4.104 , DC 7101. 

Note (1): Hypertension or isolated systolic hypertension must be confirmed by readings taken two or more times on at least three different days. For purposes of this section, the term hypertension means that the diastolic blood pressure is predominantly 90mm. or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160mm. or greater with a diastolic blood pressure of less than 90mm. 

Note (2): Evaluate hypertension due to aortic insufficiency or hyperthyroidism, which is usually the isolated systolic type, as part of the condition causing it rather than by a separate evaluation. 

Note (3): Evaluate hypertension separately from hypertensive heart disease and other types of heart disease. 

Where the criteria for a compensable rating under a diagnostic code are not met, and the schedule does not provide for a noncompensable rating, as in DC 7101, a noncompensable rating will be assigned when the required symptomatology for a compensable rating is not shown. 38 C.F.R. § 4.31. 

Turning to the evidence, private treatment records from "Union County General Hospital," dated from November 1995 to October 2008, reflect blood pressure readings ranging from 100/60 to 158/98. A March 12, 1997 record notes that the Veteran's blood pressure was increased. Readings were 140/74 and 150/96; it was noted that the Veteran had been prescribed Vasotec at 7mg, but was not taking anything now. He was prescribed Procardia at 30mg. On April 16, 1998 the Veteran's blood pressure was 160/100 and the Veteran's Procardia medication was increased to 60 mg. On April 21, 1998 the Veteran's blood pressure was 100/67. In December 2001, the Veteran's blood pressure readings were 178/108 and 172/100. The Veteran had complaints of feeling shaky with a change in prescription. It was noted that the Veteran was taking Adalat at 60mg and was not responding and that he should be changed back to Procardia at 60mg. In October 2008, the Veteran's blood pressure reading was 160/100. He presented for treatment in an anxious state. In November 2008, the Veteran reported that his hypertension was worsening, and that he experienced anxiety, loss of appetite, racing pulse and heart flutter for the previous 2 weeks. 

VA outpatient treatment records, dated from August 2002 to July 2012, reflect blood pressure readings ranging from 108/67 to 148/79. A September 2002 VA outpatient treatment record indicates the Veteran reported that his blood pressure had been "good" since starting Felodipine. He noted that his readings had been 130's/80's. His blood pressure reading at that time was again 148/79. An April 2003 VA outpatient treatment record indicates the Veteran reported he had lower blood pressure reading at work and home, with systolic blood pressure readings consistently in the 130's and 120's. He was continued on Felodipine, and was diagnosed with hypertension at that time. A December 2007 VA outpatient treatment record reveals the Veteran reported that he had been checking his blood pressure at his place of employment (a hospital), which he had found to be running "good." He noted that his highest blood pressure was once 130/90, but typically was 120/70 to 130/70. He indicated that he had not taken Lisinopril since December 2006, but remained on Felodipine. 

In February 2008 the Veteran underwent a VA hypertension examination, during which the examiner noted that the Veteran was first diagnosed with hypertension in 1995, at which time he was started on medication. The examiner indicated that the Veteran was being treated with 10 milligrams of Felodipine XR and was put on a low salt diet. The Veteran reported symptoms including headaches 3 to 4 times a month and heart palpitations with anxiety. At the time of the examination, the Veteran's blood pressure reading was 148/74. The examiner noted that the Veteran's diagnosis of hypertension had been previously established. Additional blood pressure readings taken during the examination were 145/86, 142/77 and 148/74. The Veteran was diagnosed with essential hypertension. 

During an October 2008 VA PTSD examination, the Veteran reported that his hypertension had worsened, and was 165/103 during his last reading. He indicated that he had to undergo a medication change for his hypertension, and that he was almost hospitalized for his symptoms. 

In his February 2010 NOD, the Veteran reported that on October 3, 2008 his blood pressure reading was 165/103. In his VA Form 9, Appeal to the Board of Veterans' Appeals (hereinafter "Form 9"), the Veteran reiterated that in October 2008 his blood pressure reading was 165/103 after he suffered an anxiety attack. 

Most recently, in July 2012, the Veteran underwent a VA hypertension examination, during which he was diagnosed with a history hypertension since 1980. The examiner noted that the Veteran's hypertension treatment included continuous medication, including Triamterene/HCTZ, Amlodipine and Lisinopril. His blood pressure readings taken in conjunction with the examination were 128/84, 110/69 and 112/74. The examiner noted that the Veteran did not have a history of diastolic blood pressure elevation to predominantly 100 or more. The examiner observed that the Veteran had a moderately tortuous aorta found incidentally on chest X-ray in July 2012 at the Union County Hospital emergency room, and opined that a moderately tortuous aorta may be due to chronic hypertension. The examiner concluded that the Veteran's hypertension did not impact his ability to work. 

While the Veteran's hypertension is presently rated as noncompensable, in reviewing the medical evidence of record, the symptoms of the Veteran's hypertension more closely approximate the criteria for a 10 percent rating. Notwithstanding the July 2012 VA examiner's finding that the Veteran did not have a history of diastolic blood pressure elevation of predominantly 100 or more, private treatment records in April 1998 show diastolic pressure readings predominantly in the 100 range prior to an increase in dosage for Procardia to 60mg used to control these readings. Private treatment records in December 2001 also show diastolic readings predominantly in the 100 range before the Veteran's prescription was changed from Adalat back to Procardia at 60 mg. VA treatment records in September 2002 also indicate that the Veteran reported that his blood pressure had been "good" since starting Felodipine with readings in the 130's/80's. Subsequent treatment records, including the July 2012 VA examination report, note that the Veteran's hypertension treatment included continuous medication, including Triamterene/HCTZ, Amlodipine, and Lisinopril. Based on these findings, in spite of the July 2012 VA examiner's finding, the medical evidence more closely approximates the criteria of diastolic pressure being predominantly 100 or more and requiring continuous medication for control. 

The Veteran's hearing testimony is also consistent with the medical findings. The Veteran reported that he currently takes four different kinds of blood pressure pills and has done so since 2005, and that prior to getting his blood pressure under control in 2008, his readings ranged from 135/98 to 165/120. The Veteran is competent in this case to report his hypertension symptoms. 

Based on the above, the Board concludes that the medical evidence demonstrates that the Veteran's hypertension more nearly approximates a history of diastolic pressure predominantly 100 or more that requires continuous medication for control, as contemplated by a 10 percent rating under DC 7101. A rating higher than this is not warranted, as the evidence fails to show that at any point in the appeal the Veteran's hypertension has been manifested by diastolic pressure predominantly 110 or more, or systolic pressure predominantly 200 or more, which would entitle him to a 20 percent rating. 38 C.F.R. § 4.104 , DC 7101. 

"Staged ratings" are not warranted in this case. Although the schedular criteria for a 10 percent rating were met during the period under appellate review, the elevated blood pressure readings were not representative of predominant elevated readings of 110 or more of diastolic pressure or 200 or more of systolic pressure. See Hart, 21 Vet. App. at 505; Fenderson, 12 Vet. App. at 126-27 . 

Accordingly, a 10 percent rating, but no higher, for hypertension is warranted. To the extent that any further increase is denied, the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).

Extraschedular Consideration

The rating schedule represents, as far as is practicable, the average impairment of earning capacity. Ratings will generally be based on average impairment. 38 C.F.R. § 3.321(a), (b). To afford justice in exceptional situations, an extraschedular rating can be provided. 38 C.F.R. § 3.321(b). 

The Court clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). First, the RO or the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the veteran's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the C&P Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating. 

The Veteran has not described any exceptional or unusual features associated with his hypertension. The symptoms associated with the Veteran's hypertension are not shown to cause any impairment that is not already contemplated by the rating criteria, and the Board finds that the rating criteria reasonably describe his disability. While a February 2008 VA examination report noted that the Veteran had complaints of headaches and heart palpitations with anxiety, these symptoms were not specifically related to the Veteran's diagnosis of hypertension. To the extent that these symptoms might be related to the Veteran's diagnosis of hypertension, the Board has referred this matter back to the RO for adjudication, as noted in the introduction. For these reasons, referral for consideration of an extraschedular rating is not warranted for this claim.

As a final matter, the Board notes that under Rice v. Shinseki, 22 Vet. App. 447 (2009), the Board must remand an increased rating issue if the Veteran, or the evidence of record, raises the issue of unemployability due to service-connected disabilities, as inextricably intertwined with the issue of entitlement to total disability rated based on individual unemployability due to service-connected disabilities (hereinafter "TDIU"). However, the record reflects that the Veteran is currently employed; and it was noted on examination in July 2012 that the Veteran's hypertension did not impact his ability to work; hence any development or consideration under Rice is rendered moot.


ORDER

Entitlement to an initial 10 percent disability evaluation, but no higher, for service-connected hypertension is granted, subject to the rules governing the payment of monetary benefits.



____________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs